545 So.2d 1193 (1989)
VERSAILLES ARMS APARTMENTS
v.
Dorothy PETE.
No. 88-CA-2341.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
*1194 Arthur S. Mann, III, Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for plaintiff.
Suzanne Butler, New Orleans Legal Assistance Corp., New Orleans, for defendant.
Before GARRISON, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, the Versailles Arms Apartments, evicted defendant, Dorothy Pete, and her two minor children, from its apartment complex for nonpayment of rent. Defendant now appeals. We reverse.
Defendant entered a lease agreement with plaintiff in November, 1987. Under the terms of the agreement she was to pay a minimal monthly rental with the balance being paid by the U.S. Department of Housing and Urban Development (HUD). This is commonly referred to as a "Section 8" rent subsidy. The HUD program is designed to provide adequate housing for low income persons.
Under the lease agreement defendant was obligated to tender her rent payment on the first day of each month. Because she received the monthly assistance check after the fifth of each month, she consistently paid her rent late. On October 6, 1988, plaintiff gave defendant notice to vacate her apartment for non-payment of rent. Plaintiff subsequently filed a rule for possession in First City Court of the City of New Orleans. After trial on the merits a judgment was rendered in favor of plaintiff, ordering defendant to vacate her apartment.
On appeal defendant raises several assignments of error, two of which we find dispositive. Defendant claims that the notice given to her was defective. A plethora of federal regulations govern the landlord tenant relationship under Section 8. However, in the case at bar we find that a contractual provision in the lease, regarding the content of the notice of termination, was not complied with.
The lease agreement provided that the lease could be terminated only in accordance with "HUD regulations, state and local law, and the terms of this Agreement." The lease agreement further provided that a notice of termination given by the owner-lessee must:
"1. Specify the date this agreement will be terminated;
2. State the grounds for termination with enough detail for the Resident to prepare a defense;
3. Advise the Resident that he/she has 10 days within which to discuss the proposed termination of tenancy with the Owner. The 10 day period will begin on the earlier of the date the notice was hand-delivered to the *1195 unit or the day after the date the notice was mailed. If the Resident requests the meeting, the Owner agrees to discuss the proposed termination with the Resident; and
4. Advise the Resident of his/her right to defend the action in court."
The notice given by plaintiff, which is contained in the record, complies with the first, second, and fourth requirement, but not the third. The notice simply states that "[t]his is a ten (10) day notice for you to vacate...." Thus, the notice implies that it is a foregone conclusion that the tenant must vacate the apartment and that she may only explain herself if she goes to court.
A lease is a synallagmatic contract. La. C.C. arts. 1914, 2669. Contracts legally entered into have the effect of law on the parties to them. La.C.C. art. 1983; Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261 (La.1981), General Leasing Co. v. Leda Towing Co., Inc., 286 So.2d 802 (La. App. 4th Cir.1973), writ denied, 290 So.2d 334 (La.1974). The notice requirements in the lease agreement were the law between the parties.
Proper notice to a tenant to vacate is a prerequisite to the filing of a rule for possession. Lichtentag v. Burns, 258 So.2d 211 (La.App. 4th Cir.1972), writ denied, 261 La. 467, 259 So.2d 916 (1972). Proper notice of termination (notice to vacate) was not given to the defendant. Therefore, the trial court erred when it found to the contrary. Plaintiff's rule for possession should have been dismissed.
In addition, it appears that in the past the plaintiff regularly accepted late rent payments from the defendantthat is, later than the fifth day of each month. Where a lessor customarily accepts these late rental payments, such custom has the effect of altering the original contract with respect to punctuality of rent payments. In such cases the landlord's right to strict enforcement of the lease rental provisions is considered to have been waived; the lessor must give advance notice of his intention to strictly enforce the lease in the future. Housing Authority of St. John v. Shepherd, 447 So.2d 1232 (La.App. 5th Cir. 1984); Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3rd Cir.1975). See also Leinhardt. v. Marrero Land and Improvement Association, Ltd, 137 So.2d 387 (La.App. 4th Cir.1962).
The basis for such a rule is the general feeling that it is inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period, without demand for punctuality, and then on a future date of his own choosing, cancel the lease for nonpayment of rent. Housing Authority of St. John v. Shepherd, supra; Himbola Manor Apartments v. Allen, supra.
In the case at bar the plaintiff had accepted late rent payments for several months prior to October, 1988. The defendant was not given any prior notice that, beginning in October, the plaintiff would strictly enforce the lease provision requiring payment of rent on the fifth day of each month. The notice to vacate could not have served this purpose because it was given after October 5th. It also did not specifically notify defendant that the lease would be strictly enforced in the future. For this reason, also, plaintiff's rule for possession should have been dismissed.
For the reasons assigned we reverse the judgment of the trial court and dismiss plaintiff's rule for possession.
REVERSED AND RENDERED.